**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| MELVIN NICHOLS, | ) | CASE NO.  1:10-cv-2263 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | VECCHIARELLI |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| Defendant. | ) | **ORDER** |

Plaintiff, Melvin Nichols ("Plaintiff"), challenges the final decision of Defendant,

Michael J. Astrue, Commissioner of Social Security ("the Commissioner"), denying

Plaintiff's application for a Period of Disability ("POD") and Disability Insurance Benefits

("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423 ("the Act").

This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the

undersigned United States Magistrate Judge pursuant to the consent of the parties

entered under the authority of 28 U.S.C. § 636(c)(2).  For the reasons set forth below,

the Commissioner's final decision is AFFIRMED.

## I.  PROCEDURAL HISTORY

Plaintiff filed an application for a POD and DIB on February 17, 2005, and alleged a disability onset date of September 24, 2004.  (Tr. 47.)  The application was denied initially and upon reconsideration, so Plaintiff requested a hearing before an administrative law judge ("ALJ").  (Tr. 47.)  On January 9, 2008, ALJ Norman R. Buls held Plaintiff's hearing by video conference.  (Tr. 47.)  Plaintiff appeared, was represented by counsel, and testified.  (Tr. 47.)  On April 23, 2008, ALJ Buls found Plaintiff not disabled.  (Tr. 12.)  On August 15, 2008, the Appeals Council vacated and remanded ALJ Buls's decision.  (Tr. 12.)

On November 3, 2008, ALJ Thomas Ciccolini ("the ALJ") held Plaintiff's hearing upon the Appeals Council's remand.  (Tr. 357.)  Plaintiff appeared, was represented by counsel, and testified.  (Tr. 357.)  A medical expert ("ME") and vocational expert ("VE") also appeared and testified.  (Tr. 357.)  On February 4, 2009, the ALJ found Plaintiff not disabled.  (Tr. 27.)  On August 4, 2010, the Appeals Council declined to review the ALJ's decision, so the ALJ's decision became the Commissioner's final decision.  (Tr. 4.)  On October 5, 2010, Plaintiff timely filed his complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  On March 18, 2011, Plaintiff filed his Brief on the Merits.  (Doc. No. 18.)  On June 1, 2011, the Commissioner filed his Brief on the Merits.  (Doc. No. 21.)  Plaintiff did not file a Reply Brief.

Plaintiff asserts two assignments of error:  (1) the ALJ failed to determine that Plaintiff's gouty arthritis was a severe impairment; and (2) the ALJ failed to give good reasons for giving the opinion of Plaintiff's treating physician, Dr. Brooks, less than controlling weight.

2

## II.    EVIDENCE

### A.    Personal and Vocational Evidence

Plaintiff was 50 years old on the date he was last insured for DIB.  (Tr. 26.)  He has at least a high school education and is able to communicate in English.  (Tr. 26.) He has past relevant work experience as a mail carrier.  (Tr. 25.)

### B.    Medical Evidence

Plaintiff claimed both physical and mental impairments, but his mental impairments are not at issue here.  It is not disputed that Plaintiff suffered obesity, sleep apnea, diabetes mellitus, hypertension, and knee pain caused by gouty arthritis.  (Tr. 15-17.)  On June 25, 2005, Plaintiff presented to Dr. Todd S. Hochman, M.D. for an evaluation of his knee pain, hip pain, and obstructive sleep apnea.  (Tr. 178.)  Dr. Hochman determined that, "[b]ased on the finding of [his] examination, [Plaintiff] would not [have] difficulties with work related to physical activities such as walking short distances, standing, sitting, or carrying and lifting lighter objects."  (Tr. 180.)

On July 6, 2005, state agency reviewing physician Dr. Freihofner, M.D.,[1] assessed Plaintiff's physical residual functional capacity ("RFC") as follows.  (Tr. 189-96.)  Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently.  (Tr. 190.)  He could sit, stand, and walk for about 6 hours in an 8-hour workday with normal breaks.  (Tr. 190.)  His abilities to push and pull were not limited except to the extent that he was limited in his abilities to lift and carry.  (Tr. 190.)  He could never climb ladders, ropes, or scaffold; he could occasionally climb ramps and stairs; and he could

---

[1] The record does not clearly indicate Dr. Freihofner's first name.

3

frequently balance, stoop, kneel, crouch, and crawl.  (Tr. 191.)  He was limited in his ability to reach in all directions, but he otherwise had no manipulative limitations.  (Tr. 192.)  He had no visual, communicative, or environmental limitations.  (Tr. 192-93.)  Dr. Freihofner determined that Plaintiff was partially credible, but that Plaintiff's impairments were not as severe as Plaintiff alleged.  (Tr. 194.)  On October 7, 2005, state agency reviewing physician Dr. W. Jerry McCloud, M.D., affirmed Dr. Freihofner's findings.  (Tr. 196.)

On October 12, 2005, Dr. Barry H. Brooks, M.D., authored a medical source statement indicating Plaintiff's physical RFC as follows.[2]  (Tr. 250-51.)  Plaintiff could lift and carry 5 pounds occasionally.  (Tr. 250.)  Plaintiff could lift either 5 or 6 pounds frequently—it is not clear because it appears as if Dr. Brooks superimposed either a 5 over a 6, or a 6 over a 5 when he wrote his opinion of Plaintiff's ability to lift frequently.  (Tr. 250.)  Plaintiff could could sit, stand, and walk for 4 hours in an 8-hour work day and without interruption.  (Tr. 250.)  He could rarely climb, balance, stoop, crouch, kneel, and crawl.  (Tr. 251.)  He could occasionally reach, push, and pull; and he could frequently handle, feel, see, hear, speak, and perform fine and gross manipulation.  (Tr. 251.)  He was restricted from working in environments with moving machinery, extreme temperatures, chemicals, dust, noise, and fumes.  (Tr. 251.)

On February 4, 2008, Dr. Franklin D. Krause, M.D., authored a medical source statement indicating Plaintiff's physical RFC as follows.  (Tr. 295-300.)  Plaintiff could continuously lift up to 50 pounds and frequently lift up to 100 pounds.  (Tr. 295.)  He

---

[2] Dr. Brooks was Plaintiff's primary care physician since February 18, 2001.  (Tr. 185.)

4

could continuously carry up to 20 pounds, frequently carry up to 50 pounds, and occasionally carry up to 100 pounds.  (Tr. 295.)  He could sit and stand for 8 hours at a time and walk for 5 hours at a time without interruption.  (Tr. 296.)  He could sit, stand, and walk for 8 hours in an 8-hour workday.  (Tr. 296.)  He could continuously reach, handle, finger, feel, push, pull, and operate foot controls.  (Tr. 297.)  He could occasionally climb ladders, ropes, and scaffolds; and he could frequently climb stairs and ramps, balance, stoop, kneel, crouch, and crawl.  (Tr. 298.)  He could never work in unprotected heights or around moving machinery; however, he could occasionally operate a motor vehicle and frequently tolerate humidity and wetness, dust, odors, fumes, other pulmonary irritants, extreme temperatures, and vibrations.  (Tr. 299.)

## C.    Hearing Testimony

### 1.    Plaintiff's Testimony

Plaintiff testified as follows at his November 3, 2008, hearing.  Plaintiff was five feet, seven inches tall and weighed 253 pounds.  (Tr. 363.)  He occasionally drove a car.  (Tr. 363.)  He was married and was supported by his wife.  (Tr. 363.)  He had no problems using his extremities for grasping, and he could reach above his shoulders. (Tr. 364.)  He could not walk or stand for long periods of time because he became short of breath, light headed, and dizzy; but he was able to sit.  (Tr. 365.)  He did not do yard work; rather, his son took care of it.  (Tr. 365.)

### 2.    The ME's and VE's Testimony

The ME reviewed Plaintiff's medical records.  The ALJ then posed the following hypothetical to the VE:

5

> The gentleman cannot do his past relevant work as a postal mail carrier. Okay.  However, I want you to consider a gentleman similar to this gentleman with the following residual functional capacity.  There are no special limitations such as sight or hearing.  There are no postural or manipulative limitations.  There are some environmental limitations . . . such a gentleman should avoid unprotected heights, which would include scaffolding, ladders, ropes.  He should not be around moving machinery . . . .  In regards to exertional considerations I want you to find that a similar hypothetical person could lift, carry, push, and pull 15 pounds frequently and 50 pounds occasionally.  And could sit, stand or walk six out of an eight-hour workday.

(Tr. 375-76.)  The hypothetical also included Plaintiff's age and education.  (Tr. 375.) The VE testified that such a person could perform other, light unskilled work as a photocopy machine operator (for which there were 1,500 positions in the region, 3,200 positions in Ohio, and 92,000 positions in the nation), mail clerk (for which there were 900 positions in the region, 3,500 positions in Ohio, and 80,000 positions in the nation), and cashier (for which there were 20,000 positions in the region, 70,000 positions in Ohio, and 1.7 million positions in the nation).  (Tr. 376.)

Plaintiff's counsel offered a modified version of the ALJ's hypothetical to provide that the hypothetical person could stand and walk for only 2 hours in an 8-hour workday; required a sit/stand option; and could only occasionally kneel and stoop.  (Tr. 377.)  The VE testified that such limitations would limit such a person to sedentary work.  (Tr. 377.)

The VE verified that his testimony was consistent with the Dictionary of Occupational Titles and its companion publication, the Selected Characteristics of Occupations.  (Tr. 371.)

### III.    STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she

6

establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).  To receive SSI benefits, a recipient must also meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 *and* 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) *and* 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience.  20 C.F.R. §§ 404.1520(d) *and* 416.920(d).  Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) *and*

7

416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV.   SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.   The claimant last met the insured status requirements of the Social Security Act on December 31, 2006.

2.   The claimant did not engage in substantial gainful activity during the period from his alleged onset date of 9/24/04 through the date last insured of December 31, 2006.

3.   Through the date last insured, the claimant had the following severe impairments:  obesity, sleep apnea, and diabetes mellitus.

4.   After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to lift, carry, push, and pull 15 pounds frequently and 50 pounds occasionally; sit, stand, or walk about 6 hours out of an 8 hour work day; but should have avoided unprotected heights including scaffolds, ladders, ropes; and should not have been around moving machinery.

5.   Through the date last insured, the claimant was unable to perform any past relevant work.

. . . . .

8.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

9.   Through the date last insured, considering the claimant's age, education, work experience, and  residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

10.     The claimant was not under a disability, as defined in the Social
        Security Act, at any time from 9/24/04, the alleged onset date,
        through December 31, 2006, the date last insured.

(Tr. 15-27.)

## V.    LAW & ANALYSIS

### A.    Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether

the Commissioner's decision is supported by substantial evidence and was made

pursuant to proper legal standards.  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512

(6th Cir. 2010).  Review must be based on the record as a whole.  *Heston v. Comm'r of

Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  Courts may look into any evidence in the

record to determine if the ALJ's decision is supported by substantial evidence,

regardless of whether that evidence has actually been cited by the ALJ.  *Id.*  However,

courts do not review the evidence *de novo*, make credibility determinations, or weigh

the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir.

1989).

The Commissioner's conclusions must be affirmed absent a determination that

the ALJ failed to apply the correct legal standards or made findings of fact unsupported

by substantial evidence in the record.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281

(6th Cir. 2009).  Substantial evidence is more than a scintilla of evidence but less than a

preponderance and is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.  *Brainard*, 889 F.2d at 681.  A decision supported by

substantial evidence will not be overturned even though substantial evidence supports

9

the opposite conclusion.  *Ealy*, 594 F.3d at 512.

### B.    The ALJ's Determination of Severe Impairments

Plaintiff contends that the ALJ erred by failing to determine that Plaintiff's gouty arthritis was a severe impairment.  The Court finds that this assignment of error lacks merit because it is, at most, harmless error and not a basis for remand.

Although the determination of severity at the second step of a disability analysis is a *de minimis* hurdle in the disability determination process, *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988), the goal of the test is to screen out totally groundless claims, *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir.1985).  Once an ALJ determines that a claimant suffers a severe impairment at step two of his analysis, the analysis proceeds to step three; accordingly, any failure to identify other impairments, or combinations of impairments, as severe would be only harmless error because step two would be cleared.  *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (citing *Maziars v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) ("Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence.").  However, all of a claimant's impairments, severe and not severe, must be considered at every subsequent step of the sequential evaluation process.  *See* 20 C.F.R. § 404.1545(e).

Here, the ALJ found that Plaintiff suffered the following severe impairments: obesity, sleep apnea, and diabetes mellitus.  Upon these findings, Plaintiff cleared step

10

two of the analysis.  *See Anthony*, 266 F. App'x at 457.  Any defect in the ALJ's assessment of Plaintiff's gouty arthritis at step two of his analysis would be, at most, harmless error and not a basis for remand.  *See id.* (citing *Maziars*, 837 F.2d at 244); *Pompa*, 73 F. App'x at 803.

### C.    The ALJ's Assessment of Plaintiff's Treating Physician

Plaintiff contends that the ALJ erred by failing to give good reasons for giving the opinion of Plaintiff's treating physician, Dr. Brooks, less than controlling weight.  For the following reasons, the Court finds that this assignment of error lacks merit.

"An ALJ must give the opinion of a treating source controlling weight if he finds the opinion well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (internal quotes omitted).  If an ALJ decides to give a treating source's opinion less than controlling weight, he must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight.  *See Wilson*, 378 F.3d at 544 (quoting S.S.R. 96-2p, 1996 WL 374188, at *5 (1996)).

Here, the ALJ gave Dr. Brooks's opinion less than controlling weight for three reasons:  (1) the opinion that Plaintiff could lift 5 pounds occasionally but 6 pounds frequently was "obviously inconsistent within itself"; (2) "Dr. Brooks did not identify medical findings to support his assessment"; and (3) the opinion was inconsistent with the other evidence in the record.  (Tr. 23.)  Plaintiff contends that the ALJ's conclusion

11

that Dr. Brooks's opinion is self contradictory is inaccurate and unsupported because Dr. Brooks wrote Plaintiff could frequently lift 5 pounds, not 6 pounds, and the ability to lift 5 pounds frequently was not inconsistent with the ability to lift 5 pounds occasionally. A review of Dr. Brooks's opinion reveals, however, that it is not clear and is susceptible to the ALJ's interpretation.  The ALJ could reasonably conclude that this lack of clarity undermined the opinion's credibility.  Moreover, the ALJ explained that Dr. Brooks's opinion was not well-supported by medically acceptable clinical and laboratory diagnostic techniques and was not consistent with the other substantial evidence in the case record.  (*See* Tr. 23.)  These were appropriate bases for rejecting Dr. Brooks's opinion, *Wilson*, 378 F.3d at 544, and Plaintiff has not taken issue with them. Accordingly, this assignment of error lacks merit.

## VI.  CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

> *s/ Nancy A. Vecchiarelli*
> U.S. Magistrate Judge

Date:  October 20, 2011